**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       Crim. No. 03-CR-80139
       Civil No. 06-CV-13091

CHRISTOPHER LEE BENSON,

       Defendant.
       _____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

Pending before the court is Defendant Christopher Lee Benson's July 6, 2006 motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence based on his state and federal counsel's ineffective assistance. For the reasons stated below, the court will deny Defendant's motion.

**I. BACKGROUND**

Defendant was arrested pursuant to a search warrant on January 23, 2003. In a state court felony complaint, Defendant was charged with possession with intent to deliver less than 50 grams, felon in possession of a firearm, felony firearm, and as a habitual offender, fourth. (State Felony Compl., Def.'s Ex. B.) Defendant was represented by James Parker at his February 3, 2003 preliminary examination. (02/03/03 Trans. at 3, Def.'s Ex. C.) At the pre-exam, the Wayne County District Court judge listed the charges as stated above, specifying that the first count carried a maximum sentence of twenty years, the second count carried a maximum sentence of five years, and the felony firearm charge would result in a mandatory consecutive two-

year sentence. (*Id.*) The judge specifically noted that the "habitual fo[u]rth notice . . . makes . . . the five-year offense and the twenty-year offense, life-term offenses." (*Id.*) Because federal agents were not present at the pre-exam with a federal complaint warrant, the state prosecutor offered to allow Defendant to "plead guilty as charged," and if Defendant refused the offer, Defendant was informed that the state charges would be dropped and Defendant would face federal prosecution under the federal-state cooperative program Project Safe Neighborhoods ("PSN"). (*Id.* at 4.) In response to the court's questioning, the prosecutor clarified that he was allowing Defendant to "plead guilty as charged, and was not offering Defendant a "flat two years in prison." (*Id.*) The prosecutor submitted, however, that "pleading guilty as charged is probably a deal given what [Defendant] could be facing over at the Federal level." (*Id.*) Defendant rejected the offer to plead guilty as charged in state court, and invoked his right to a preliminary examination. (Def.'s Aff. at ¶ 7, Def.'s Ex. I.)

At the preliminary examination, where Defendant was represented by Kim Basen, the state charges were dismissed and Defendant was arrested and taken into custody by federal agents. (02/06/03 Trans. at 3-4, Def.'s Ex. D) In the February 27, 2003 federal indictment, Defendant was charged with the following: (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Defendant signed a written acknowledgment form that listed the maximum penalties of ten years and/or a $250,000 fine for the first count, twenty years and/or a $1 million dollar fine for the second count and a mandatory five year consecutive term and/or a

$250,000 fine for the third count. (Def.'s Mot. at 5.) At a May 7, 2003 conference, where Defendant was represented by Robert Kinney, the parties discussed the maximum penalties as outlined above, and a proposed Rule 11 plea agreement whereby the Government would agree to a non-binding recommendation of a 165-month sentence. (05/07/03 Trans. at 5.) Defendant stated that he understood the plea offer, and that if he was convicted at trial, his sentence would be "*at least* three levels higher." (*Id.* at 3 (emphasis added).)

Defendant proceeded to trial, represented by Mr. Kinney, where he was convicted by a jury on all three courts. Mr. Kinney filed a motion to withdraw, which the court accepted, and Harold Gurewitz was appointed to represent Defendant. According to the U.S. Probation Department's pre-sentence report, Defendant was subject to enhanced penalties as a career offender, making Defendant's guidelines 360 months to life. Defendant did not file objections to the pre-sentence report, but instead filed a motion for downward departure, claiming his criminal history did not support a career offender status, and that Defendant did not receive sufficient notice of the maximum career offender penalties. The court denied Defendant's motion during a February 11, 2004 hearing, and sentenced Defendant to 360 months imprisonment.

Defendant appealed his conviction, raising the following claims: (1) the prosecution's reference during trial to his post-*Miranda* warning silence violated his Fifth Amendment rights; (2) his lawyer was ineffective for failing to disclose the upper limit of his sentencing disclosure if he proceeded to trial; and (3) he should be re-sentenced in light of *United States v. Booker*, 543 U.S. 220 (2005). The Sixth Circuit found no Fifth Amendment error, declined to review his ineffective assistance of counsel claim, and

remanded for re-sentencing in light of *Booker*. Defendant was re-sentenced on July 19, 2005, and received a sentence of 360 months, which the Sixth Circuit affirmed.

On June 6, 2006, Defendant filed this motion under 28 U.S.C. § 2255, claiming (1) that the PSN program "constructively denied [Defendant] his right to counsel during the state court proceedings," or in the alternative "he was deprived of the effective assistance of counsel in state court" when his attorney failed to properly advise him regarding "the potential sentence he would face in federal court"; and (2) that "he was deprived of the effective assistance of counsel in federal court because counsel failed to provide reasonably competent advice regarding [Defendant's] sentencing exposure." (Def.'s Mot. at 12.)

## II. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Such motions, however, must demonstrate "the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief to be obtained. *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

### III.  DISCUSSION

Defendant contends in his § 2255 motion that his counsel was ineffective for a number of reasons.  In order to successfully prove a claim for ineffective assistance of counsel, Defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance" must be indulged.  *Id.* at 689; *see also Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974) (holding that the assistance of counsel required under the Sixth Amendment is counsel "reasonably likely to render and rendering reasonably effective assistance").  It is also important to note that "judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.

### A.  Ineffective Assistance of Counsel in Federal Court

Defendant argues that his trial counsel was ineffective (1) for not knowing Defendant would be subject to the career offender enhancement and (2) for failing to tell Defendant that he could receive a sentence of 30 years to life.  To constitute effective assistance, counsel is expected to explore with their client "the ranges of penalties under likely guideline scoring scenarios, *given the information available to the defendant and his lawyer at the time.*"  *Smith v. United Sates*, 348 F2d 545, 553 (6th Cir. 2003) (emphasis added).  At the time of the plea negotiations, both the Government and Mr. Kinney reasonably believed that the Rule 11 plea agreement guideline calculations were correct.  The fact that the probation department's investigation concluded that Defendant's criminal history qualified him for career offender status does not

5

retroactively render Mr. Kinney's assistance deficient. Although Defendant claims that his attorney should have independently conducted a thorough investigation into Defendant's criminal history, Defendant fails to cite any case law to establish his counsel's obligation to do so when there appeared no reason to suspect the stipulated guideline calculations were in error.[1]

Defendant further claims that his attorney, Mr. Kinney, never informed him that he "faced a mandatory minimum sentence of 30 years as a 'career offender' or that [Defendant] was facing a potential life sentence," (Def.'s Aff. at ¶ 15, Def.'s Ex. I), and had he known of this sentencing exposure, Defendant "would have accepted the government's offer of 165 months and pled guilty" (*Id.* at ¶ 16). This claim directly contradicts Defendant's own sworn testimony. At the May 7, 2003 hearing, the court specifically questioned Defendant's understanding of his sentencing exposure, and Defendant stated that he understood that his "sentencing range may be calculated differently if [he] was convicted at trial," and assured the court that he would not later complain that his attorney failed to explain the dangers of going to trial or the plea agreement. (05/07/03 Trans. at 3.) The court specifically cautioned that "it's possible certainly, for you to face higher sentencing range calculations, if you have gone to trial and been convicted." (*Id.*)

---

[1] It seems clear that Defendant himself failed to recognize that the guideline calculations were erroneous, despite his obvious familiarity with his own criminal history. Thus supports a conclusion that his attorney was not ineffective for failing to appreciate the same possible mistakes in the worksheet calculations.

This court has previously rejected Defendant's claim that he was unaware of the potential sentencing exposure if he proceeded to trial. In denying Defendant's motion for downward departure, the court found that Defendant understood he faced a possibility of "not just thirty-five years in federal court but *at least* thirty-five years which means perhaps more." (02/11/04 Trans. at 16 (emphasis added).) Additionally, the court found that because Defendant faced a maximum sentence of life in state court, that sentencing exposure "diminishe[d] the force of the defendant's argument considerably." (*Id.*) For these reasons, the court again rejects Defendant's claim that he was insufficiently advised by his attorney of his sentencing exposure during the plea bargaining stage.

Furthermore, Defendant fails to demonstrate prejudice resulting from this allegedly ineffective assistance. While Defendant claims that he "probably would have pleaded guilty right then, considering, you know what I'm saying, facing life," (02/11/04 Trans. at 26), that argument is severely undermined by Defendant's decision not to plead guilty in state court despite his state court exposure to a life sentence. Moreover, even if Defendant had pleaded guilty to the federal charges, the court would have nonetheless sentenced Defendant as a career offender, using the probation department's guideline calculations. Accordingly, the court finds that Defendant has failed to establish that but for counsel's deficient advice there is a reasonable probability that he would have accepted a plea resulting in a more favorable outcome.

### B. Ineffective Assistance of Counsel in State Court

Defendant also claims that his state court attorneys were ineffective for failing to warn Defendant of his potential sentencing exposure in federal court, and that the PSN

constructively deprived him of his right to counsel. First, this court has no jurisdiction over the actions of Defendant's state court attorneys. Neither Mr. Parker nor Ms. Basen were involved in Defendant's federal case, and the court is "unable to identify any jurisdictional basis for inquiring into [their] effectiveness." *Carroll v. United States*, No. 06-05, 2006 WL 1459838 (W.D. Mich. May 24, 2006) (citing *United States v. Robinson*, 408 F. Supp. 2d 437 (E.D. Mich. 2005) ("[T]he Court is unable to indentify any jurisdictional basis for inquiring into the effectiveness of the assistance provided by Defendant's state court counsel . . . . Nor does the Court view the PSN initiative as conferring the generalized power to assess the performance of a federal defendant's state court counsel.")); *see also United States v. Powell*, No. 03-80659, 2006 WL 1676346 at *2 n.1 (E.D. Mich. Jun. 9, 2006) ("Although the court has taken the time to evaluate Defendant's arguments on the merits, the court thinks, in fact, that Defendant's state attorney's conduct is not relevant in a § 2255 case.").

Second, even if this court has jurisdiction to hear Defendant's claims regarding his state court counsel, those claims fail on the merits for the reasons stated below. Defendant claims that his state court counsel were unable "to appreciate the state prosecutor's plea offer to Petitioner to plead as charged as the deal that it actually was," and "never advised Mr. Benson of the potential sentence he would receive if he pled guilty, or the potential sentence he faced if his case was transferred to federal court." (Def.'s Mot. at 28-29.) The record establishes, however, that Defendant refused the clearly-explained state court plea offer, despite knowing that he faced a maximum state court sentence of life, and that he would be transferred to federal court, where he would likely face an even greater sentencing exposure. (02/03/03 Trans. at 3-4, Def.'s Ex. C.)

Therefore, Defendant was sufficiently aware that his federal sentence could well be substantially higher than the state court sentencing exposure, and Defendant has failed to show that his state court counsel were ineffective for failing to advise him of his sentencing exposure if he chose to proceed to trial.[2]

### IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence [Dkt. # 70] is DENIED.


s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: February 27, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 27, 2007, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

---

[2] Defendant relies heavily on *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006), where the Sixth Circuit affirmed the district court's decision to dismiss the federal indictment to remedy the ineffective assistance of counsel the defendant received as a result of the PSN program. Defendant fails, however, to demonstrate that the facts of this case are significantly similar to *Morris*. Defendant has not shown, for example, that he was assigned an attorney only immediately before the pre-exam as in *Morris,* that his attorney had no opportunity, therefore, to acquaint himself with the circumstances of Defendant's case as in *Morris,* that he was unable to speak to his attorney privately about the plea offer as in *Morris,* or that, as in *Morris,* his attorney was both unaware of his federal sentencing exposure and the strength of his case I defense of it. Accordingly, Defendant's reliance on *Morris* to support his requested relief is unpersuasive.